**Raymond J. STEPHANY**

v.

**George WAGNER, et al.**

**Civ. A. No. 85–3497.**

United States District Court,
E.D. Pennsylvania.

Feb. 4, 1987.

Raymond J. Stephany, pro se.

Robert R. Reber, Kenneth E. Sands, Jr., Reading, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Plaintiff, Raymond Stephany, seeks damages pursuant to 42 U.S.C. § 1983 for his confinement in administrative segregation for approximately two months while incarcerated in Berks County Prison in 1983. There are no material issues of fact in dispute, rendering this case suitable for disposition without trial as requested by the parties on cross-motions for summary judgment.

Stephany was transferred to administrative segregation on July 31, 1983. Prison officials had been warned that some prisoners were planning an escape attempt on July 30, and apparently took action in reliance upon that information. The extent of Stephany's involvement, if any, is neither apparent from the record, nor is it relevant to our disposition of the case. On August 1, Stephany was given a copy of an administrative segregation form which stated that he had been confined as a security risk "[b]ased on information received". Although Stephany made numerous written requests for more specific information and requested a hearing to prove that whatever information prison personnel had received was false, he was never given any more specific information about why he was transferred to and remained in administrative segregation. He was placed back in the general prison population on October 7, 1983, also without explanation.

Stephany's § 1983 claim is based upon *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In that case, the United States Supreme Court examined portions of Title 37, Pennsylvania Code, and determined that the regulations governing the use of administrative custody in state prisons created a liberty interest in remaining in the general prison population and thus triggered the protections of the Due Process Clause of the Fourteenth Amendment.

The threshold legal issue in this case is whether a Berks County Prison handbook, which, *inter alia*, describes administrative segregation, similarly confers a liberty interest and similarly implicates the Due Process Clause.[1]

1. Plaintiff Stephany does not contend that those portions of Title 37, Pennsylvania Code, which deal with the administration of county prisons is the source of the liberty interest which he asserts. Rather, Stephany relies solely upon the Berks County Prison Residents handbook. The section thereof that is relevant to this case reads as follows:

D. Administrative Segregation:

Definition: The confinement of an inmate to his own or another cell pursuant to administrative review consistent with the policy outlined below.

1. Indications for Use: Administrative Segregation may be considered when:

(a) The security of the institution and/or the safety of any individual(s) is immediately threatened.

(b) Upon the recommendation of a physician or mental health caseworker that, in his or her professional opinion, it would be in the best interests of said inmate(s) to be confined.

(c) When an inmate engages in behaviors that are immediately threatening to his/her life and/or health.

(d) When an inmate requests protective custody.

2. Provisions:

(a) When any of the above situations occurs the Shift Commander on duty shall report immediately to either the Warden or Assistant Warden. In the event that these individuals cannot be reached the Shift Commander shall use his discretion in the matter and shall consult the Warden or Assistant Warden as soon as is practical.

(b) After comprehensive investigation and review of the matter the Administrator may:

(i) Order an individual confined to his own cell.

(ii) Transfer an individual to another area or cell.

(c) The matter in question will be reviewed by the Administration on a daily basis and restrictions will be modified as the situation warrants.

3. Other Considerations:

(a) The Administrator shall have the power to review contact visitation status or participation in any program which would bring said inmate into contact with civilians other than treatment personnel.

(b) The following privileges SHALL BE restricted:

(i) Movies.

(ii) Access to dining room.

(iii) Participation in special group programs and/or events.

(c) The following privileges SHALL NOT be restricted:

(i) Commissary (will be delivered to cell).

(ii) Professional visits (will be escorted or seen in the cell).

(iii) Mail privileges.

Plaintiff argues that the relevant portion of the handbook constitutes "regulations governing the confinement of inmates in administrative segregation" that are "not distinguishable in any meaningful respect from the provisions at issue in *Hewitt*". (Plaintiff's Brief in Support of Motion for Summary Judgment, Doc. # 12 at 7, 8).[2]

The basis for the Court's decision in *Hewitt* was the use of "explicitly mandatory language in connection with requiring specific substantive predicates" in setting forth the procedures to be employed in confining a prisoner in administrative segregation. 459 U.S. at 472, 103 S.Ct. at 871. The Court took pains to point out that the adoption of procedural guidelines, *per se,* does not create the liberty interest.

Plaintiff here contends that Berks County Prison officials likewise created "specific substantive predicates" for confinement in administrative segregation by limiting such action to certain triggering events, *e.g.,* an immediate threat to the security of the institution and/or the safety of an individual.

■ While that may be necessary for the existence of a liberty interest, it is not sufficient. The second part of the Court's test for the creation of a liberty interest is the inclusion of "explicitly mandatory language" with respect to the procedures to be followed once the prisoner has been placed in administrative segregation. In the regulations at issue here, the only "explicitly mandatory language" requires the Shift Commander on duty to report to the Warden or Assistant Warden either immediately or "as soon as is practical" when

the decision has been made to place an inmate into administrative segregation.

There are no provisions for written notification to the prisoner or for a hearing as there are in the regulations construed in *Hewitt.* Likewise, there are no standards for determining when the inmate should be returned to the general population or when other restrictions should be modified. In short, the section pertaining to administrative segregation in the handbook cited by plaintiff Stephany merely provides a description of administrative segregation at Berks County Prison. There is nothing in that section which indicates an intention to limit the discretion of prison personnel in the use of administrative segregation.

■ Moreover, assuming *arguendo* that one of the four circumstances described under "Indications for Use" must occur before administrative segregation may be imposed. It is clear that prison officials adhered to the policy set forth in the handbook with respect to Stephany. Documents provided by the defendants and unchallenged by the plaintiff indicate that an escape had been planned by certain inmates. (*See,* Exhibits D–F, Motion of Defendants for Summary Judgment, Doc. # 13). Thus, a threat to the security of the institution, one of the necessary "substantive predicates", did exist when Stephany was placed in administrative segregation. There is no requirement that prison officials prove that every prisoner confined under those circumstances was a major participant in the threatened breach of security.[3]

---

(iv) Non-contact visitation.

(v) Exercise and hygiene (will be supervised individually).

(d) Any and all other privileges or activities will be individually reviewed by the Administrator.

(Exhibit G to Defendants' Motion for Summary Judgment, Doc. # 13; Exhibit E to Plaintiff's Motion for Summary Judgment, Doc. # 12).

2. Neither the plaintiff nor the defendants have explained the use made of the Residents Handbook in the administration of the Berks County Prison. It is unclear, *e.g.,* if the procedures outlined in the administrative segregation section are given to prison personnel who are ex-

pected to follow them or if the handbook merely describes usual procedures to the inmates for informational purposes only. Since defendants, as well as plaintiff, seem to assume that the handbook contains policies and procedures followed by the prison, we, too, will assume that such is the case.

3. As both sides to this litigation properly recognize, this Court is not a forum for determining whether Stephany was accurately described as "a security risk". Although Stephany has consistently maintained that whatever information may have prompted his confinement in administrative segregation was false, that is not an issue here and need not be addressed.

**158**

Consequently, we conclude that there are meaningful differences between the regulations construed in *Hewitt* and those at issue here. We also conclude that the regulations cited by plaintiff do not confer a liberty interest in remaining in the general prison population in the Berks County Prison. The description of the prison's policy with respect to administrative segregation contained in the Resident's Handbook does not rise to the level found by the Supreme Court to create a liberty interest in that the section of the Residents Handbook which deals with administrative segregation does not combine "specific substantive predicates" with "explicitly mandatory language" so that the discretion of prison officials is limited. Moreover, our examination of the record reveals that the procedures outlined in the Handbook were followed with respect to Stephany.

For the foregoing reasons, we will deny plaintiff's motion for summary judgment and grant that of the defendants.

An appropriate order follows.